IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:18-CV-84-RJ

LINDA BOWMAN PEMBERTON,

    Plaintiff/Claimant,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.

ORDER

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-35, -39] pursuant to Fed. R. Civ. P. 12(c). Claimant Linda Bowman Pemberton ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is allowed, Defendant's Motion for Judgment on the Pleadings is denied, and the case is remanded to the Commissioner, pursuant to sentence four of § 405(g), for further proceedings.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on April 25, 2014, alleging disability beginning May 1, 2013. (R. 17, 212–13). Her claim was denied initially and upon reconsideration. (R. 17, 108–36). A hearing before the Administrative Law Judge ("ALJ") was held on November 10, 2016, at which Claimant, represented by counsel, appeared

and testified. (R. 17, 33–53). On April 19, 2017, the ALJ issued a decision denying Claimant's request for benefits. (R. 14–32). Claimant then requested a review of the ALJ's decision by the Appeals Council (R. 210–11), and she submitted additional evidence as part of her request (R. 54–105). The Appeals Council found that the new evidence did not show a reasonable probability that it would change the outcome of the decision, so it did not consider and exhibit the evidence. (R. 2). The Appeals Council denied Claimant's request for review on March 22, 2018. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R.

2

§ 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

3

In this case, Claimant alleges the following errors: (1) the RFC does not adequately account for Claimant's migraines because the ALJ erroneously discounted Claimant's testimony and improperly weighed the opinions of Dr. Ayman Gebrail and Dr. Dewey Bridger, and (2) the ALJ erred in failing to consult a vocational expert ("VE") at Step Five of the sequential evaluation process. Pl.'s Mem. [DE-36] at 9–20.

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since May 1, 2013, the alleged onset date. (R. 19). Next, the ALJ determined Claimant had the following severe impairments: lupus and migraines. *Id.* The ALJ also found Claimant had nonsevere impairments of a thyroid disorder, hypertension, vertigo, fibromyalgia, probable conversion disorder manifested as bilateral upper extremity paresthesias and variable weakness, major depressive disorder, and generalized anxiety disorder. (R. 19–20). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 21). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in a mild limitation in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. (R. 20).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] and that she could frequently climb ramps, stairs, ladders, ropes,

---

[1] Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm

4

and scaffolds; frequently balance, stoop, kneel, crouch, and crawl; and frequently reach overhead with the bilateral upper extremities. The ALJ also limited Claimant to understanding, remembering, and carrying out simple instructions. In making this assessment, the ALJ found Claimant's statements about the intensity, persistence, and limiting effects of her symptoms not entirely consistent with the medical and other evidence. (R. 24).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as an office assistant and bookkeeper. (R. 27). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 27–28).

## V. DISCUSSION

### A. The RFC is supported by substantial evidence.

Claimant contends the ALJ failed to sufficiently account for her migraines in the RFC. Pl.'s Mem. [DE-36] at 9–19. Claimant argues that the RFC is not supported by substantial evidence because Claimant's testimony, Dr. Bridger's opinion, and Dr. Gebrail's opinion regarding her migraines are all more restrictive than the RFC. *Id.* The court disagrees.

An individual's RFC is the capacity she possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on

---

or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

5

a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5.

Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Brown*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed along with a claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence," as well as a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.*; *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

### 1. Claimant's testimony

The ALJ provided two justifications for formulating an RFC less restrictive than Claimant's testimony: first, she reported a level of daily activities inconsistent with her testimony, and second, the record shows that Claimant's symptoms improved with treatment.

6

When assessing a claimant's RFC, it is within the province of the ALJ to determine whether a claimant's statements are consistent with the medical and other evidence. *See Shively v. Heckler*, 739 F.2d 987, 989–90 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.") (citation omitted). Federal regulation 20 C.F.R. § 404.1529(a) provides the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593–94. First, the ALJ must objectively determine whether the claimant has medically documented impairments that could cause his or her alleged symptoms. S.S.R. 16-3p, 2016 WL 1119029, at *3 (Mar. 16, 2016) (effective Mar. 28, 2016); *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes that determination, he must then evaluate "the intensity and persistence of the claimant's pain[,] and the extent to which it affects her ability to work," *Craig*, 76 F.3d at 595, and whether the claimant's statements are supported by the objective medical record. S.S.R. 16-3p, 2016 WL 1119029, at *4; *Hines*, 453 F.3d at 564–65.

Objective medical evidence may not capture the full extent of a claimant's symptoms, so where the objective medical evidence and subjective complaints are at odds, the ALJ should consider all factors concerning the "intensity, persistence and limiting effects" of the claimant's symptoms. S.S.R. 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 404.1529(c)(3) (showing a complete list of factors). The ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence, *Craig*, 76 F.3d at 595–96, but neither is the ALJ required to accept the claimant's statements at face value; rather, the ALJ must "evaluate whether the statements are consistent with objective medical evidence and the other evidence."

7

S.S.R. 16-3p, 2016 WL 1119029, at *6; *see Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *4–8 (E.D.N.C. Mar. 23, 2011), adopted by 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011). "The ALJ cannot 'reject a claimant's statements about the intensity and persistence of . . . pain or other symptoms' or about the effect of those symptoms on a claimant's ability to work 'solely because the available objective medical evidence does not substantiate them.'" *Ladda v. Berryhill*, No. 17-1366, 2018 WL 5096065, at *4 (4th Cir. Oct. 18, 2018).

Here, the ALJ gave two reasons for discrediting Claimant's testimony: (1) her testimony was inconsistent with her reported daily activities and (2) the evidence showed that her treatment was effective. Regarding Claimant's daily activities, the ALJ noted:

> Specifically, the claimant reported that she was able to live with her family, cook meals for her family, do laundry, spend time with her grandchildren and her daughter, talk on the telephone with family, volunteer at the high school once per week, type on a keyboard, shop for groceries, help her daughter with homework, drive her daughter to events, care for her pet, take care of personal hygiene, perform light house cleaning, use a riding lawnmower, sweep, pay bills, count change, handle a savings account, use a checkbook/money orders, activities which generally reveal functioning at a greater level than alleged. (Exhibits 8E, 6F, and 12F). Of note, her descriptions of her daily activities are representative of a fairly active lifestyle and are not indicative of a significant restriction of activities or constriction of interests.

(R. 25). Contrarily, Claimant testified that she has lupus flare-ups lasting for weeks at a time, and when she has a flare-up, she doesn't do anything and stays in bed. (R. 40). She also testified that there are only four or five days in a month when she does not have a migraine. (R. 49). Claimant stated that about thirty percent of her migraines are debilitating. (R. 51).

The ALJ's explanation was insufficient because he considered the type of activities Claimant performs but did not consider the extent to which she is able to perform them. *See Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (finding error when the ALJ stated that the claimant could "maintain her personal hygiene, cook, [and] perform light household chores" but did not

8

consider the claimant's testimony that she has trouble dressing and bathing, she can only prepare simple meals, it takes her longer than normal to do laundry and shop, and she sometimes "spends the entire day on the couch"); *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 263 (4th Cir. 2017). For example, the ALJ found that Claimant can cook meals for her family, but Claimant testified that she can only microwave food; she cannot hold a pan, and she pays her daughter to cook. (R. 25, 45). The ALJ found that Claimant can do laundry, but she testified that she only folds laundry while sitting in bed. (R. 25, 46). The ALJ found that Claimant can volunteer at her daughter's high school once per week, but Claimant testified that she stopped volunteering because she could only sit for ten minutes, and she could not volunteer if she had a migraine. (R. 25, 43–44). The ALJ found that Claimant can shop for groceries, but Claimant testified that she can shop with her husband for no more than fifteen or twenty minutes. (R. 25, 46). The ALJ found that Claimant can drive her daughter to events, but Claimant testified that she has not driven since June, which was seven months before the hearing. (R. 25, 47). The ALJ also found that Claimant can take care of her personal hygiene, but Claimant testified that she can only brush her hair and cannot dry or straighten it. (R. 25, 41). Claimant also testified that she can dress herself, but she cannot tie shoelaces. (R. 41). In summary, the ALJ erroneously considered the type of activities Claimant could perform without considering her testimony on the extent to which she performs them. *See Woods*, 888 F.3d at 694.

Nonetheless, the ALJ offered a second, sufficient explanation for formulating an RFC less restrictive than Claimant's testimony. The ALJ noted that Claimant's symptoms have improved with treatment, stating:

> The claimant has been prescribed and has taken appropriate medications for the alleged impairments but the medical records reveal that the medications have been relatively effective in controlling the claimant's symptoms. Specifically, in terms

9

> of the claimant's lupus, treatment notes showed that the claimant's symptoms were well controlled with medications and injections of Depo-Medrol. Although the claimant suffered from lupus flares, the record shows that her symptoms dissipated with steroids, muscle relaxers, or pain relievers. . . . Similarly, treatment notes showed that the claimant's migraines were relatively well controlled with Botox injections. Furthermore, the claimant reported that the injections improved the effectiveness of her medications.

(R. 25). The ALJ concluded "that the claimant's allegations of a total inability to work are overstated and unsupported by the medical evidence of record," and he formulated the RFC accordingly. *See Ladda*, 2018 WL 5096065, at *3 (finding no error in the ALJ's credibility determination where the ALJ sufficiently explained how the evidence supported his conclusions, including evidence that existing treatments managed the claimant's pain). The ALJ appropriately considered Claimant's testimony in light of the entire record, and he did not err in constructing an RFC less restrictive than Claimant's testimony.

### 2. The medical opinions

The ALJ also adequately explained why the RFC is less restrictive than the opinions of Dr. Bridger and Dr. Gebrail. When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. § 404.1545(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* § 404.1527(c).[2] In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* § 404.1527(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners. *Id.* § 404.1527(c)(2). When the opinion of a treating source regarding the nature and severity of a claimant's impairments is

---

[2] The rules for evaluating opinion evidence for claims filed after March 27, 2017 are found in 20 C.F.R. § 404.1520c, but 20 C.F.R. § 404.1527 still applies in this case.

10

"well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" it is given controlling weight. *Id.* However, "[i]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). An ALJ may not reject medical evidence for the wrong reason or no reason. *See Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006). "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (citations omitted). However, "[a]n ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' or has failed to give a sufficient reason for the weight afforded a particular opinion." *Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. 2015) (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)).

In June 2014, Dr. Gebrail evaluated Claimant and concluded:

> She will have difficulty working long periods of the day without frequent breaks. She will have difficulty with any laborious activities such as heavy bending, lifting, twisting, pushing, pulling, prolonged sitting, prolonged standing. The patient will

11

need frequent days off work due to her anticipated migraine headaches associated with her systemic lupus erythematosus.

At this time she should be able to complete her activities of daily living, and work at a sedentary low stress occupation may be of benefit or of low duration.

(R. 480–81). The ALJ wrote:

I accord this opinion little weight, as it is not supported by the examination findings. Specifically, although the claimant exhibited various areas of tenderness and 4/5 hand grip and rotator cuff/shoulder strength, the claimant was able to ambulate with a normal gait, perform a normal range of motion throughout her body, squat and rise, and exhibit 5/5 strength in the lower extremities. Such evidence does not support Dr. Gebrail's severe restrictions. (Exhibit 5F).

(R. 25–26). The ALJ explained that he discounted Dr. Gebrail's opinion because it was inconsistent with Dr. Gebrail's own evaluation notes, and the ALJ thereby gave a sufficient reason for formulating an RFC that is less restrictive than Dr. Gebrail's opinion.

Also in June 2014, Dr. Bridger evaluated Claimant. On a check-box form titled "Physical Capacities Evaluation," he noted that her symptoms would constantly interfere with the attention and concentration required to perform simple work-related tasks; she could only sit for two hours and stand and walk for one hour in an eight-hour work day; she can perform simple grasping for twenty percent of a work day; she can push or pull for twenty percent of a work day; she can perform fine manipulation for thirty percent of an eight hour work day; she can frequently lift and occasionally carry less than five pounds; she can occasionally bend and reach above shoulder level but never squat, crawl, or climb; and she would need to take unscheduled breaks during a work day to change position every one to two hours. (R. 522–24).

On another form titled "Anxiety Related Disorder," Dr. Bridger noted that Claimant has a mild restriction in activities of daily living, a marked restriction in maintaining social functioning, and extreme restrictions in maintaining concentration, persistence, and pace and in episodes of

12

decompensation. (R. 528). On a third form titled "Depressive Disorder," Dr. Bridger marked that Claimant has extreme restrictions in activities of daily living; maintaining social functioning; maintaining concentration, persistence, and pace; and episodes of decompensation. (R. 533–34). All three forms were dated June 2, 2014. (R. 522–34).

The ALJ wrote:

> I accord this opinion little weight, as it is not supported by the treatment records. Specifically, Dr. Bridger's treatment notes showed that the claimant's lupus and migraines were stable with medications and her mental, neurological, and musculoskeletal examinations of record were relatively normal. Furthermore, I note that Dr. Bridger's opinions are internally inconsistent, as he provided different limitations regarding the claimant's mental impairment. (Exhibits 3F, 5F, 6F, 8F, and 12F–14F).

(R. 26). The ALJ provided two adequate reasons for discounting Dr. Bridger's opinion: first, it was inconsistent with Dr. Bridger's other treatment notes, and second, it was internally inconsistent because on two check-box forms dated the same day, Dr. Bridger came to two different conclusions regarding Claimant's mental functioning. The ALJ has adequately explained his decision to give Dr. Bridger's opinion little weight. The court can trace the ALJ's reasoning in formulating a less restrictive RFC, and the ALJ has built an accurate and logical bridge from the evidence to his conclusion. *See Clifford*, 227 F.3d at 872. Accordingly, the ALJ did not err in formulating the RFC.

**B. The ALJ erred in relying exclusively on the Grids at step five.**

Claimant contends that the Commissioner did not meet her burden at step five of the sequential evaluation process because the ALJ relied solely upon the Grids and did not seek the testimony of a vocational expert, despite the presence of non-exertional limitations. Pl.'s Mem. [DE-36] at 19–20. Defendant responds that the ALJ's reliance on the Grids alone is appropriate

because even though Claimant has non-exertional limitations,[3] the ALJ found:

> The additional limitations have little or no effect on the occupational base of unskilled light work. Specifically, the limitation on overhead reaching would not significantly erode the light occupational base as other forms of reaching are intact and the limitation is to frequent. Additionally, understanding, remembering, and carrying out simple instructions would not preclude unskilled work.

(R. 29); Def.'s Mem. [DE-40] at 9.

At step five of the sequential evaluation process, the burden is on the Commissioner to show that the claimant possesses the RFC adjust to the demands of other work. 20 C.F.R. § 404.1520. "If the claimant has no nonexertional impairments that prevent her from performing the full range of work at a given exertional level, the Commissioner may rely solely on the Grids to satisfy his burden of proof." *Aistrop v. Barnhart*, 36 F. App'x 145, 146 (4th Cir. 2002). However, if the claimant does have nonexertional limitations, then the Grids serve "only as a guide," and the ALJ "must prove through expert vocational testimony that jobs exist in the national economy which the claimant can perform." *Id.* at 147; *see also* 20 C.F.R. § 404.1569a(d) (directing that when a claimant has a combination of exertional and nonexertional limitations, "we will not directly apply the rules in appendix 2 . . . the rules provide a framework to guide our decision").

Some courts have held that when nonexertional limitations have little effect on the RFC, exclusive reliance on the Grids is acceptable. *See Williamson v. Colvin*, No. 5:15-CV-70-GCM, 2016 WL 4992101, at *5 (W.D.N.C. Sept. 16, 2016) (finding no error in the ALJ's reliance on only the Grids because "[t]he ALJ determined that Plaintiff had only a de minimis nonexertional limitation"), *aff'd*, 692 F. App'x 738 (4th Cir. 2017); *Guyton v. Colvin*, No. 7:15-CV-59-FL, 2016 WL 716515, at *5–6 (E.D.N.C. Feb. 5, 2016) (holding that limitations to no public contact and

---

[3] A nonexertional limitation is one other than a strength limitation that affects the claimant's ability to meet the demands of jobs. 20 C.F.R. § 404.1569a(c)(1).

understanding, remembering, and carrying out simple instructions "have little to no effect on the occupational base for light work," so the ALJ was not required to hear testimony from a VE), *adopted by* 2016 WL 737904 (E.D.N.C. Feb. 23, 2016); *Rogers v. Barnhart*, 204 F. Supp. 2d 885, 897 (W.D.N.C. 2002) (holding that nonexertional impairments "preclude the use of the guidelines only when the limitations are significant enough to prevent a wide range of gainful employment at the designated level").

Other cases indicate that if the claimant has a nonexertional limitation that affects the RFC, exclusive reliance on the Grids is error regardless of whether the limitation has a large or small effect on the range of work the claimant can perform. *See Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) ("The guidelines do not take into account nonexertional limitations such as pain, loss of hearing, loss of manual dexterity, postural limitations and pulmonary impairment. When nonexertional limitations such as these occur in conjunction with exertional limitations, the guidelines are not to be treated as conclusive."); *Gory v. Schweiker*, 712 F.2d 929, 931 (4th Cir. 1983) ("When a claimant suffers from both exertional and nonexertional limitations, the tables are not conclusive but may only serve as guidelines."); *Coffee v. Berryhill*, No. 7:18-CV-58-RJ (E.D.N.C. Mar. 21, 2019); *Suarez v. Berryhill*, No. 5:16-CV-415-FL, 2017 WL 3782785, at *10 (E.D.N.C. July 24, 2017); *Cromwell v. Colvin*, No. 7:13-CV-186-FL, 2015 WL 103891, at *4 (E.D.N.C. Jan. 7, 2015); *Paul v. Astrue*, No. 7:10-CV-70-D, 2012 WL 669759, at *6–7 (E.D.N.C. Jan. 18, 2012); *Pickett v. Astrue*, No. 7:10-CV-190-D, 2011 WL 4443229, at *8 (E.D.N.C. Sept. 22, 2011); *Morris v. Astrue*, No. 5:09-CV-436-BO, 2010 WL 4320928, at *2 (E.D.N.C. Oct. 20, 2010). In *Pickett*, the ALJ found that the claimant "had the RFC to perform the full range of light work." 2011 WL 4443229, at *2. The ALJ relied exclusively on the Grids at step five and did not hear the testimony of a vocational expert. *Id.* This court held that an ALJ may only rely

15

exclusively on the Grids when "a claimant's nonexertional impairments do not prevent him from performing the full range of work at a given exertional level," and "[a]n ALJ may not rely exclusively on the grids where a nonexertional condition or impairment" affects the RFC. *Id.* at *8 (citing *Walker v. Bowen*, 889 F.32d 47, 49 (4th Cir. 1989)). This court found no error in the ALJ's reliance upon the Grids in *Pickett* because the claimant was capable of performing the full range of light work. *Id.* Here, however, Claimant cannot perform the full range of light work because she is limited to frequent climbing of ramps, stairs, ladders, ropes, and scaffolds; frequent balancing, stooping, kneeling, crouching, and crawling; frequent reaching overhead with the bilateral upper extremities; and understanding, remembering, and carrying out simple instructions. (R. 22–27). Accordingly, Claimant has nonexertional limitations that affect her RFC, so exclusive reliance upon the Grids was error.

Moreover, even if exclusive reliance upon the Grids were appropriate when the nonexertional limitation is de minimis, the ALJ failed to adequately explain how Claimant's nonexertional limitations do not substantially affect her ability to perform light work. The ALJ found that the limitation to frequent reaching overhead does not significantly erode the light occupational base because other forms of reaching are intact and the limitation is to frequent. (R. 28). Additionally, Defendant cites *Guyton* for the proposition that a limitation to understanding, remembering, and carrying out simple instructions has little or no effect on the occupational base. 2016 WL 716515, at *6; Def.'s Mem. [DE-40] at 9. However, neither the ALJ nor Defendant addresses the other nonexertional limitations, including the limitations on climbing, balancing, stooping, kneeling, crouching, and crawling. More explanation was necessary to demonstrate how those nonexertional limitations do not substantially erode the kinds of light work Claimant can perform.

16

In summary, cases from this circuit and district indicate that the presence of any nonexertional limitation in the RFC precludes exclusive reliance on the Grids. Even if exclusive reliance on the Grids is appropriate in cases where the nonexertional limitation's effect is de minimis, in the present case, the ALJ failed to explain why all Claimant's nonexertional limitations have little effect on the number of jobs she can perform. Accordingly, the ALJ's exclusive reliance on the Grids was error. Remand is appropriate for the ALJ to consult a VE. *See Morris*, 2010 WL 4320928, at *2.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-35] is ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-39] is DENIED, and this matter is REMANDED to the Commissioner, pursuant to sentence four of § 405(g), for further proceedings consistent with this Order.

So ordered the 13th day of May 2019.

Robert B. Jones, Jr.
United States Magistrate Judge